UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARTHUR GELMAN,<br><br>Petitioner,<br><br>v.<br><br>TODD M. LYONS, Acting Director of the U.S. Immigration and Customs Enforcement; SYVESTER M. ORTEGA, Acting Field Officer Director of Enforcement and Removal Operations; TODD BLANCHE, United States Attorney General; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; and WARDEN BOBBY THOMPSON of the South Texas ICE Processing Center,<br><br>Respondents.[1] | § | SA-26-CV-278-FB (HJB) |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Arthur Gelman's Petition for Writ of Habeas Corpus (Docket Entry 1), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) (*see* Docket Entry 18). For the reasons set out below, I recommend that the petition be **GRANTED**, and that Petitioner be released from Respondents' custody.

[1] Todd Blanche was sworn in on August 10, 2026, as the U.S. Attorney General. Blanche is therefore substituted for former Attorney General Pamela Bondi as the proper, named Respondent Markwayne Mullin was sworn in on March 24, 2026, as Secretary of Homeland Security. Mullin is therefore substituted for former Secretary of Homeland Security Kristi Noem as the proper, named Respondent. *See* FED. R. CIV. P. 25(d).

## I. Jurisdiction.

The Court has jurisdiction to consider the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . . challenges to the lawfulness of . . . . continued custody after a deportation order ha[s] become final.") (emphasis omitted). The undersigned has the authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## II. Background.

The facts in this case are largely undisputed.[2] Petitioner was born in Uzbekistan. (Docket Entry 12-1.) He immigrated to the United States as a child in the 1990s. (Docket Entry 13, at 2.)[3] He and his family obtained legal permanent resident status; however, Petitioner was later convicted of a drug-possession felony, and he was ordered removed in 2002. (Docket Entry 12-1, at 1; Docket Entry 13, at 2.) Petitioner apparently cooperated in the plans to remove him to Uzbekistan, and he was released from detention pending his removal. (Docket Entry 12-1, at 2.)

There things stood for approximately a decade. In February of 2012, immigration officials learned of an Uzbeki law from 1992 that provided its nationals with a one-year window to obtain an Uzbeki passport; those who failed to obtain a passport within that time period would lose their citizenship. (Docket Entry 12-1, at 2.) At the time the law was passed, Petitioner was a child

---

[2] The facts in this section are mostly derived from the declaration attached to the response to Petitioner's § 2241 application (Docket Entry 12-1), and the *pro se* reply which Petitioner filed before he obtained counsel (Docket Entry 13). At an August 21, 2026, status conference before the undersigned, the parties indicated that the case could be decided on the facts presented in these documents, without the need for additional filings or an evidentiary hearing.

[3] Respondents' filing in this case asserts that Petitioner unlawfully entered the United States (Docket 12, at 1), but the supporting declaration they provide does not support this assertion.

residing legally in the United States, and he apparently did not seek a passport; indeed, all of his immediate family have now become United States citizens. (*See id.*; Docket Entry 13, at 2.)

In light of the Uzbeki law, Uzbekistan denied travel documents for Petitioner, and immigration officials sought to remove him to Russia instead. (Docket Entry 12-1, at 2.) In May of 2012, Russia likewise denied the request for travel documents. (*Id.*) Years passed: Petitioner was arrested again on criminal charges in 2017 and 2022; the immigration authorities' removal efforts were renewed; travel documents again could not be obtained[4]; and Petitioner was again released on immigration bond. (*Id.*)

On October 23, 2025, Petitioner was detained once more by immigration officials, when he reported per his bond conditions. (Docket Entry 12-1, at 2.) He has been in custody since that time, and he is currently being held at the South Texas ICE Processing Center in Pearsall, Texas. (*Id.* at 1.). Petitioner has since been asked to fill out travel document forms for Uzbekistan and Russia. (*Id.* at 2.) Uzbekistan denied travel documents on March 27, 2026. (*Id.* at 3.) The outcome of any renewed request to Russia is unknown, and immigration officials consider Petitioner to be stateless. (*Id.*)

**III. Discussion.**

Petitioner does not challenge his removal before this Court. Instead, he argues that his detention violates 8 U.S.C. § 1231 because he has been detained for over six months following his arrest on September 22, 2025, without a significant likelihood of removal in the reasonably foreseeable future. (Docket Entry 1, at 2.)

---

[4] Petitioner asserts that immigration officials also attempted to remove him to Israel, Mexico, and Canada, without success. (Docket Entry 1, at 6.) Respondents do not contest this assertion.

"Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory, *see id.* (citing 8 U.S.C. § 1231(a)(2)). After 90 days, however, detention is no longer mandatory; instead "[u]pon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, No. 4:25-Cv-4128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231).

Although the statute does not specify a time limit on how long DHS may continue to detain an alien in the post-removal period, the Supreme Court has held that post-removal-period detention may last no longer than is "reasonably necessary to bring about the alien's removal," *see Zadvydas*, 533 U.S. at 689. Recognizing that not all removals can be accomplished within 90 days, the Supreme Court concluded that the Government is presumptively entitled to an additional 90 days to finish the job. *See id.* at 701. Accordingly, post-removal-order detentions are "presumptively reasonable" for up to "six months." *Id.* at 701; *see Mogos v. Thompson*, No. 5:26-CV-740-JKP, 2026 WL 475079, at *3 (W.D. Tex. Feb. 13, 2026) ("Th[e] six-month period includes the 90-day removal period."). Once an alien subject to a final order of removal has been detained for six months, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

To state a *Zadvydas* claim, Petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. This is a "modest standard." *Mogos*, 2026 WL 475079, at *4. It does not require that Petitioner "rule out 'any prospect of removal—no matter how unlikely or unforeseeable.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 702). If Petitioner provides a good reason to doubt that he will be

removed anytime soon, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "This is a fact-intensive inquiry in which the likelihood of release in the foreseeable future shrinks as the post-removal period grows." *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025) (citing *Zadvydas*, 533 U.S. at 701).

In this case, the parties do not dispute that Petitioner has been detained under § 1231, pursuant to a final order of removal, for more than six months. Instead, the parties dispute whether each side met their respective burdens regarding the likelihood of Petitioner's removal in the reasonably foreseeable future.

Petitioner has presented good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. His filings show that immigration officials have repeatedly tried to obtain travel documents for his removal for more than 20 years without success, and that they have again failed to obtain travel documents during his 10 months of incarceration. (Docket Entries 1, 13.) These undisputed facts easily meet the modest "good reason" standard.

The burden therefore shifts to Respondents, whose sole argument is that they have "contacted the State Department for assistance with third country removal and also requested assistance in determining whether Uzbekistan would accept [Petitioner] as a stateless individual." (Docket Entry 12-1, at 3.) Under the *Zadvydas* standard, Respondents cannot meet their burden based on requests alone. *Cf. Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025) (immigration officials do not meet their *Zadvydas* burden by "a pending request for travel documents, alone"); *Medellin Martinez v. Bondi*, No. SA:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025) (same). The mere "potential for a travel document at some point in the future is not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs*

*Enf't*, No. 2:06-CV-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted).

Accordingly, Petitioner has sufficiently established that removal is not significantly likely in the reasonably foreseeable future; he should be released from Respondents' custody pursuant to § 1231 and *Zadvydas*.

**IV. Conclusion and Recommendation.**

Based on the foregoing, I recommend that the Petition for Writ of Habeas Corpus (Docket Entry 1) be **GRANTED**, and that Petitioner be ordered **RELEASED WITHIN 48 HOURS** of the Court's order, under an order of supervision.

**V. Notice of Right to Object.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Normally, a party must file any written objections to a Report and Recommendation within 14 days after being served with a copy of the same. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). At the August 21, 2026, hearing, however, the parties agreed to shorten that deadline to five days. Accordingly, the parties must file their objections to this Report and Recommendation, if any, **within five days** of their receipt of the same.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; frivolous, conclusory, or general objections may be disregarded. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on August 24, 2026.

Henry J. Bemporad
United States Magistrate Judge